# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRANSWEST CAPITAL, INC.,<br><br>Plaintiff,<br><br>v.<br><br>CASHLESS CONCEPTS, INC., et al.,<br><br>Defendants. | Case No. 1:12-cv-00049-SAB<br><br>PRETRIAL ORDER<br><br>MOTIONS IN LIMINE<br>FILING DEADLINE:        June 21, 2013<br><br>MOTIONS IN LIMINE<br>RESPONSE DEADLINE:   July 5, 2013<br><br>MOTIONS IN LIMINE<br>HEARING:<br>Date: July 12, 2013<br>Time: 9:30 a.m.<br>Courtroom 9 (SAB)<br><br>JURY TRIAL:<br>(3-4 days)<br>Date: July 23, 2013<br>Time: 8:30 a.m.<br>Courtroom 9 (SAB) |

This Court conducted a May 1, 2013 pretrial conference.[1] Plaintiff Transwest Capital, Inc. ("Plaintiff" or "Transwest") appeared by counsel Michael P. Smith. Defendant/cross-complainant Schenker Logistics, Inc. ("Schenker") appeared by counsel Leonard Herr. Defendants/cross-defendants Cashless Concepts, Inc., dba Rental Transport Services ("RTS") and Danny Ray Digman ("Mr. Digman") did not appear. Pursuant to F.R.Civ.P. 16(e), the Court issues this final pretrial order.

---

[1] The May 1, 2013 pretrial conference took place before the Honorable Lawrence J. O'Neill. The parties have since consented to the jurisdiction of a United States Magistrate Judge for all purposes and therefore the trial will take place before the Honorable Stanley A. Boone.

1

### A. Summary

Transwest's operative complaint ("complaint") alleges that on October 16, 2009, Transwest entered into a written factoring and security agreement with RTS, wherein Transwest agreed to make cash advances to RTS in return for assignments of RTS' accounts receivables.

Between December 13, 2010 and January 13, 2011, RTS and its principal Mr. Digman generated invoices based on bills of lading which were represented as evidencing shipments of equipment for United Rentals Northwest, Inc. ("United Rentals"), formerly a party to this action, during the period December 10, 2010 through January 12, 2011.

The complaint further alleges that at the request of Transwest, Schenker (United Rentals' logistics vendor) represented to Transwest that the bills of lading were valid, based on information Schenker received from United Rentals. The complaint alleges that in reliance upon this information, Transwest advanced $129,500.65 to RTS and took a direct assignment on the invoices from United Rentals. Transwest subsequently submitted the invoices to Schenker and United Rentals for payment. Schenker and United Rentals advised Transwest that most of the bills of lading were invalid and refused to pay Transwest the amounts stated in the invoices.

According to the complaint, Transwest seeks damages of $129,500.65, along with prejudgment interest beginning January 4, 2011, and costs of suit.

United Rentals and Schenker have filed cross-complaints against RTS and Mr. Digman for having submitted false invoices to Transwest based on invalid or fraudulent bills of lading. United Rentals has settled with Transwest and has been dismissed from the case. Neither RTS or Mr. Digman are expected to participate in this case as they have previously refused to participate. Status as to RTS or Mr. Digman is unknown.

### B. Jurisdiction and Venue

This Court has jurisdiction and venue is proper. This Court has original jurisdiction under 28 U.S.C. § 1332 in that all of the defendants are citizens of different states, and the amount in controversy is $116,500.65. The injury occurred in this District. Venue is proper because a substantial part of the events or omissions on which the claim is based occurred in this District.

**C.   Jury/Court Trial**

Trial will be before a jury based on parties' timely demands.

**D.   Estimated Length of Trial**

This Court contemplates to complete trial in no more than four days.

**E.   Trial Date**

Trial will be **Tuesday, July 23, 2013 starting at 8:30 a.m.** before United States Magistrate Judge Stanley A. Boone in Courtroom 9 (SAB).

**F.   Undisputed Facts**

The following facts are undisputed:

1. Transwest is a factoring company which provides financing to clients by purchasing accounts receivable.
2. United Rentals is a Delaware corporation doing business in California.
3. Schenker is a North Carolina corporation doing business in California.
4. On October 16, 2009, Transwest entered into a written factoring and security agreement with RTS.
5. Transwest subsequently submitted invoices that it had received from RTS to Schenker for payment.
6. Schenker and United Rentals subsequently advised Transwest that some of the bills of lading were invalid, and refused to pay Transwest the amounts stated in the invoices.

**G.   Disputed Facts**

1. Whether RTS and Mr. Digman sold fraudulent invoices to Transwest.
2. Whether RTS and Mr. Digman misrepresented to Transwest that the bills of lading identified in the invoices were valid.
3. Whether Transwest requested that Schenker verify the validity of the bills of lading.
4. Whether Schenker represented to Transwest that the bills of lading were valid.
5. Whether representations allegedly made by Schenker were based on information

3

provided by United Rentals.

6. Whether United Rentals and Schenker knew or should have known that Transwest, or the particular class of persons to which Transwest belongs, would rely on the alleged representations.

7. Whether Transwest reasonably relied upon the truth of the alleged representations and advanced funds to RTS in exchange for an assignment of the invoices.

8. Whether Transwest was justified in relying upon the representation allegedly made by the defendants.

9. Whether the representations allegedly made by the defendants were false.

10. Whether Transwest was ignorant of the falsity of the representations allegedly made by the defendants and believed them to be true.

11. Whether RTS and Mr. Digman knew that the majority of the bills of lading referenced in the invoices were invalid at the time RTS and Digman represented to Transwest that they were valid.

12. Whether RTS and Mr. Digman made the representations with the intent to deceive and defraud Transwest.

13. Whether any representations allegedly made by Mr. Digman, RTS, United Rentals, or Schenker were made without reasonable grounds for belief.

14. Whether RTS's and Mr. Digman's representations were made with the intent to induce Transwest to rely upon them and to induce Transwest to advance cash.

15. Whether any representations allegedly made by Schenker or United Rentals were made with the intent to induce Transwest, or the particular class of persons to which Transwest belongs, to act in reliance upon them.

16. Whether Transwest suffered damages as a result of reliance upon the alleged representations by the defendants.

17. Whether Transwest suffered damages as a result of reliance upon the alleged representations by the defendants.

18. Whether Transwest suffered damages in the sum of $129,500.65.

4

19. Whether injustice can be avoided only by enforcing defendant's representations completely.

### H. Special Factual Information

*Transwest's Special Factual Information*

Transwest contends that it entered into a valid factoring and security agreement with RTS and Mr. Digman on October 16, 2009, by which RTS and Mr. Digman warranted that all purchased accounts would be bona fide exiting obligations created by the sale and delivery of goods or the rendition of services, and further warranted that Transwest would be paid on all purchased accounts. A written addendum to the agreement was signed August 5, 2010, and an amended agreement was dated March 1, 2011. Transwest does not contend that it had a direct contract with any party other than with RTS or Mr. Digman.

RTS and Mr. Digman have breached these agreements by selling Transwest invoices based on invalid bills of lading and failing to ensure that Transwest was paid on the purchased accounts.

Transwest seeks to recover $116,500.65 in damages based on the unpaid invoices, in addition to prejudgment interest from January 4, 2011 and costs of suit.

*Schenker's Special Factual Information*

Schenker contends that there was no contract between Schenker and Transwest, that Schenker did not make any false representations to Transwest, that Schenker did not know or should have known that Transwest or the particular class of persons to which Transwest belongs would be reasonably induced to rely on its alleged representations, and that any reliance Transwest may have placed on alleged statements made by Schenker was unreasonable.

### I. Disputed Evidentiary Issues

The parties point to no disputed evidentiary issues.

### J. Relief Sought

Transwest seeks damages of $116,500.65 in addition to prejudgment interest from January 4, 2011 and costs of suit. Schenker seeks damages in an unspecified amount as part of its indemnity crossclaim against RTS and Mr. Digman.

### K. Points of Law

Transwest proceeds on theories of negligent misrepresentation and promissory estoppel against Schenker. Negligent misrepresentation consists of (1) a misrepresentation of a material fact, (2) without reasonable grounds for believing it to be true, (3) with intent to induce another's reliance on the fact misrepresented, (4) ignorance of the truth and justifiable reliance thereon by the party to whom the misrepresentation was directed, and (5) damages. Fox v. Pollack, 181 Cal. App. 3d 954, 962 (1986). Promissory estoppel consists of a promise which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee and which induces such action or forbearance that is binding if injustice can be avoided only by enforcement of the promise. Drennan v. Star Paving Co., 51 Cal. 2d 409, 413 (1958).

Transwest expects a legal dispute regarding whether Schenker will be able to raise comparative negligence or apportionment of fault as a defense; Transwest contends that negligent misrepresentation is a species of intentional tort in which fault cannot be apportioned. Carroll v. Gava, 98 Cal. App. 3d 892, 897 (1979).

Schenker proceeds on the premise that Transwest will be unable to prove its case against Schenker. Schenker will pursue affirmative defenses, including Transwest's failure to mitigate its damages, Transwest's and other parties' comparative and/or contributory negligence, and apportionment of fault.

### L. Amendments – Dismissals – Abandoned Issues

The parties point to no anticipated amendments. United Rentals is expected to be dismissed as a defendant.

### M. Bifurcation and Order of Trial

The parties do not believe that bifurcation of issues at trial will be feasible or advisable.

### N. Further Discovery or Motions

The parties intend to conduction one additional deposition in Texas, to take place within three weeks of the date of service of this order. The parties do not anticipate any further motions

other than motions in limine.

**O.    Stipulations**

The parties offer no stipulations.

**P.    Settlement**

The parties participated in a settlement conference. Transwest and Schenker continue to explore settlement.

**Q.    Agreed Statement of Facts**

The parties note that presentation of all or part of the action on an agreed statement of facts is not feasible.

**R.    Witnesses**

Only witnesses listed in this pretrial order (including "rebuttal" and/or "impeachment" witnesses) shall be allowed to testify at trial, except as may otherwise be provided by this Court's order after a showing of good cause, or by stipulation of the parties and this Court's order thereon. No later than **July 15, 2013**, each party shall file and serve a final witness list, including the name of each witness along with the business or home address of each witness, to the extent known, and omitting witnesses listed in the joint pretrial statement which the parties no longer intend to call. Only witnesses listed in this pretrial order may appear on the final witness list, and no additional witnesses will be allowed to testify. This Court will strike a final witness list which is over inclusive or includes names of persons who will not legitimately be called as witnesses.

During trial, the parties' counsel are obligated to provide the Court and the other counsel, no less than one court day before a witness is called, with the name of the witness to be called. If evidentiary problems are anticipated, the parties' counsel are required to notify the Court or Court staff immediately that a hearing will be required. The parties must not wait until the start of trial after a break to cause the jury to wait. During the time set for conducting the trial before the jury, the Court will not hear argument outside the jury's presence on such matters.

*Witnesses*

1.    Brian Cummings, Transwest Capital, Inc. employee, c/o Law Offices of Michael J. Lampe, 108 West Center Avenue, Visalia, California.

2.  Danny Digman, former president of Cashless Concepts, 8300 Vail Dr., Amarillo, Texas, 79118, (806) 683-1331.

3.  Eva Digman, aka Eva McLean, wife of Mr. Digman. No address or telephone number is known for Mrs. Digman.

4.  Josh Goode, employee of TransAm Financial Services, 15910 S. Hwy. 169 Olathe, KS 66062, (913) 393-6110.

5.  D.J. Crocker, employee of TransAm Financial Services, 15910 S. Hwy. 169 Olathe, KS 66062, (913) 393-6110.

6.  Robert McEntire, employee of Untied Rentals, Modesto, California, Specific street address is unknown, (209) 342-6317. Mr. McEntire may be called to testify if the need arises.

7.  Eric Andresen, employee of United Rentals, 6125 Lakeview Rd., Charlotte, NC 28269, (704) 916-2477.

8.  James McMenemy, employee of United Rentals, New York, New York, Specific street address is unknown, (508) 277-9279.

9.  Amanda Nicholas, Logistics Coordinator, Schenker Logistics, 400 Galleria Parkway Suite 1200, Atlanta, Ga 30339, (678) 724-4873.

10. June Dow, employee of United Rentals, 8221 Hwy 225, La Porte, Texas 77571, (281) 479-8500.

11. Wanda Harp, employee of Schenker Logistics, 400 Galleria Parkway Suite 1200, Atlanta, Ga 30339.

12. David J. Jencks, Jencks & Jencks, P.C., 121 North Egan, P.O. Box 442, Madison, SD 57042, Expert for Transwest.

13. Steven N. Kurtz, Levinson Arshonsky & Kurtz, LLP, 15303 Ventura Blvd., Ste. 1650, Sherman Oaks, California, Expert for Schenker.

//

//

S.     **Trial Exhibits**

**1. Pre-Marking Exhibits**

The parties are required to pre-mark their trial exhibits.  No later than **July 5, 2013**, the parties shall exchange their proposed exhibits to the extent they have not yet done so.  The parties' counsel shall meet and conduct an exhibit conference no later than **July 12, 2013** to pre-mark and examine trial exhibits and to prepare exhibit lists, to the extent they have not yet done so.  Exhibits include any items which a party intends to show at trial, including any item which a party seeks either to admit and any item a party seeks to use but not admit [e.g., demonstrative evidence]).

All of Plaintiff's exhibits shall be marked sequentially beginning with 1 (e.g., 1, 2, etc.).  All of Defendants' exhibits shall be marked sequentially beginning with A (e.g., A, B, C...AA, BB, CC...AAA, BBB, CCC, etc.).  If exhibits are joint exhibits (i.e., any documents which the parties agree will be **admitted into evidence for all purposes**), they shall be pre-marked with the prefix "J" and numbered sequentially starting with J-1.

The parties are required to submit trial exhibits in binders and shall create four (4) complete, legible sets of exhibits in binders.  Three (3) sets shall be delivered to Courtroom Deputy Mamie Hernandez (two for use by the court and one for use by the witness at the witness stand) and one (1) set to opposing counsel, no later **July 15, 2013**.  The binders shall be identical to each other with tabs referencing the pre-marked exhibits.  No exhibit, other than those listed in this section, may be admitted or otherwise displayed or used at trial unless the parties stipulate or upon a showing that this order should be modified to prevent "manifest injustice." Fed. R. Civ. P. 16(e); Local Rule 281(b)(11).

2.     Exhibit Lists

No later than **July 15, 2013**, the parties shall file and serve their final lists of respective

pre-marked exhibits.

      3.    <u>Submission of Trial Exhibits</u>

No later than **July 18, 2013**, the parties shall submit to the clerk's office all pre-marked trial exhibits. The parties' counsel should note that, pursuant to Local Rule 281(b)(11), only those exhibits listed in the parties' pretrial statement will be permitted to be offered into evidence. Therefore, any exhibits submitted which are not listed in the pretrial statement will not be admitted without a showing of good cause or the parties' stipulation and this Court's order thereon.

      4.    <u>Objections</u>

This Court will address objections to exhibits as they arise during trial.

      5.    <u>Discovery Documents</u>

Only specifically-designated discovery documents will be eligible for admission into evidence. Therefore, the parties shall file and serve no later than **July 15, 2013** a list of all discovery documents intended to be used at trial, identifying the discovery by set number and indicating whether the original discovery document has been previously lodged with the Court. If a discovery document intended to be used at trial has not been previously lodged, the parties shall submit the original of such document along with a copy for the Court's use. Discovery documents (or relevant portions thereof) may be either separately marked and indexed as a trial exhibit (as part of the exhibit marking process described above) or, if admissible, read directly into evidence.

This Court will address objections to discovery documents as they arise during trial.

      6.    <u>Deposition Testimony</u>

Deposition testimony shall be designated by page and line number, with such designation to be filed and served no later than **July 15, 2013**. Any counter-designation as to the same deposition (also set out by page and line number) shall be filed and served no later than **July 17, 2013**. The original certified transcript of any deposition identified in a designation or counter-designation shall be lodged with the clerk's office no later than **July 18, 2013**, if not previously lodged with the Court.

This Court will address objections to deposition testimony as they arise during trial.

7. Duty of the Parties' Counsel

During the course of trial, the parties' counsel shall meet with the Court each morning to advise as to which items of evidence will be used that day and which have not already been admitted into evidence.  The Court will rule on any objections to the extent possible prior to the commencement of trial each day out of the presence of the jury and without delay to the start of scheduled trial.  If such ruling depends on the receipt of testimony or other evidence, the Court will rule as appropriate upon the receipt of such testimony or evidence.  If evidentiary problems are anticipated, the parties' counsel are required to notify the Court or Court staff immediately that a hearing outside the jury's presence will be required.  The parties must not wait until the start of trial after a break to cause the jury to wait.  During the time set for conducting the trial before the jury, the Court will not hear argument outside the jury's presence on such matters.

8. Post-Trial Exhibit Retention

The party's counsel who introduced exhibits at trial shall retrieve the original exhibits from the courtroom deputy following the verdict in the case.  The parties' counsel shall retain possession of and keep safe all exhibits until final judgment and all appeals are exhausted.

**T.    Trial Briefs**

Any trial briefs shall be filed and served no later than **July 15, 2013** and otherwise pursuant to this Court's Local Rule 285.

**U.    Motions in Limine**

This Court orders the parties' counsel to meet and confer on anticipated motions in limine and to distill evidentiary issues in advance of filing motions in limine.  This Court further orders the parties to file motions in limine as to only important, critical matters in that most evidentiary issues can be resolved easily with a conference between counsel or with the Court, only as necessary. If this Court surmises that the parties have filed motions in limine without meaningful, genuine meeting and conferring, this Court will strike the motions in limine and not hear them.

The parties, after meaningful and genuine meet and confer efforts, shall file and serve their truly disputed motions in limine no later than **June 21, 2013**.  Responses to such motions in

11

limine shall be filed and served no later than **July 5, 2013**.  This Court will neither accept nor consider reply papers.  This Court will conduct a hearing on the motions in limine on **July 12, 2013** at 9:30 a.m. in Courtroom 9 (SAB) of this Court, unless this Court determines to rule on the motions in limine on the record.

**Moving and opposition papers must be brief, succinct and well-organized.**

### V.    Joint Statement of the Case

For use during jury voir dire, the parties shall prepare a joint neutral statement of the case, which briefly describes the case, including the claims and defenses.  The joint neutral statement shall be filed and served no later than **July 15, 2013**.  The parties' counsel are required to prepare a joint statement, and this Court will not draft one for the parties based on the parties' separately proposed statements.

### W.    Proposed Jury Voir Dire

The parties shall file and serve any proposed jury voir dire no later than **July 15, 2013**.

### X.    Proposed Jury Instructions and Verdict

1.    Conference

The parties shall serve their proposed jury instructions and verdicts on one another no later than **July 5, 2013**.  The parties shall conduct a conference to address their proposed jury instructions and verdicts no later than **July 12, 2013**.  At the conference, the parties **SHALL** reach agreement on jury instructions and a verdict for use at trial.

2.    Jury Instructions

The parties, no later than **July 15, 2013**, shall file and serve all agreed-on jury instructions and identify such as the agreed-on jury instructions.  No later than **July 15, 2013**, Transwest may file and serve **no more than 10 proposed jury instructions** and identify such as jury instructions upon which the parties could not agree.  No later than **July 15, 2013**, Schenker may file and serve **no more than 10 proposed jury instructions** and identify such as jury instructions upon which the parties could not agree.  Without a prior order, this Court will not consider additional proposed jury instructions past the first 10.

All jury instructions shall indicate the party submitting the instruction (i.e., joint/agreed-

on, plaintiff's or defendant's), the number of the proposed instruction in sequence, a brief title for the instruction describing the subject matter, the text of the instruction, and the legal authority supporting the instruction.

Ninth Circuit Model Jury Instructions **SHALL** be used where the subject of the instruction is covered by a model instruction.  Otherwise BAJI or CACI instructions **SHALL** be used where the subject of the instruction is covered by BAJI or CACI.  **All instructions shall be short, concise, understandable, and neutral and accurate statements of the law. Argumentative or formula instructions will not be given and must not be submitted.** Quotations from legal authorities without reference to the issues at hand are unacceptable.

The parties shall, by italics or underlining, designate any modification of instructions from statutory or case authority, or any pattern or form instruction, such as the Ninth Circuit Model Jury Instructions,  BAJI, CACI or any other source of pattern instructions.  The parties must specifically state the modification made to the original form instruction and the legal authority supporting the modification.

**This Court will not accept a mere list of numbers of form instructions from the Ninth Circuit Model Jury Instructions, CACI, BAJI or other instruction forms.  The proposed jury instructions must be in the form and sequence which the parties desire to be given to the jury.  All blanks to form instructions must be completed.  Irrelevant or unnecessary portions of form instructions must be omitted.**

No later than **July 15, 2013**, the parties may file and serve meaningful written objections to disputed jury instructions proposed by another party.  All objections shall be in writing, shall set forth the proposed instruction objected to in its entirety, shall specifically set forth the objectionable matter in the proposed instruction, and shall include a citation to legal authority to explain the grounds for the objection and why the instruction is improper.  A concise argument concerning the instruction may be included.  Where applicable, the objecting party shall submit an alternative proposed instruction covering the subject or issue of  law.

3. Verdict

This Court expects and specifically orders the parties to file an agreed-on verdict no later

1  than **July 15, 2013**.  If a party seeks modification or addition to an agreed-on verdict, that party

2  may file and serve, no later **than July 15, 2013**, a proposed verdict which includes the agreed-on

3  portions and the party's proposed modification or addition which is clearly indicated on that

4  party's proposed verdict.  This Court will strike and will not accept separately proposed verdicts

5  upon which the parties do not agree.

6      The parties' counsel are ordered to prepare a joint, agreed-on verdict, and this Court will

7  not draft one for the parties based on the parties' separately proposed verdicts.

8      4. <u>Submission To Court</u>

9      All jury instructions and verdicts shall be e-mailed as a Word attachment to

10  saborders@caed.uscourts.gov no later than **July 15, 2013**.  **Jury instructions and verdicts will**

11  **not be given or used unless they are so e-mailed to the Court.**

12      **Y.**     **Attorney Fees**

13      Transwest does not seek an award of attorney fees against Schenker.  Transwest seeks to

14  recover attorneys' fees against RTS and Mr. Digman, pursuant to its written contract.  Transwest

15  intends to pursue a post-trial motion to impose attorney fees against RTS and Mr. Digman.

16  Schenker seeks attorney fees against RTS and Mr. Digman in its crossclaim.

17      **Z.**     **Trial Protective Order**

18      The parties seek no trial protective order.

19      **AA.**     **Compliance with This Order**

20      Strict compliance with this order and its requirements is mandatory.  This Court will

21  strictly enforce the requirements of this pretrial order, especially those pertaining to motions <u>in</u>

22  <u>limine</u>, jury instructions and a verdict.  Counsel and parties are subject to sanctions for failure to

23  fully comply with this order and its requirements. This Court will modify this order "only to

24  //

25  //

26  //

27  //

28  //

14

prevent manifest injustice." F.R.Civ.P. 16(e). This Court ADMONISHES the parties and counsel to obey the Federal Rules of Civil Procedure and this Court's Local Rules and orders and are subject to sanctions as this Court deems appropriate.

IT IS SO ORDERED.

Dated:  **May 17, 2013**

UNITED STATES MAGISTRATE JUDGE